2-17-2015

Fourth Court of Appeals

300 Dolorosa, Suite 3200

San Antonio, TX 78205-3037


Re: Appellant Cause No.: 04-14-00060-CR

Trial Court No.: 2013-CR-3514

Style: John M Devorhak

v

State of Texas


Clerk,

Please find enclosed a response to Memorandum opinion. The opinion was filed on January 7, 2015, but I did not recieve a copy until February 13, 2015 because it was mailed to an incorrect address. Would you please note this fact.

I am incarcerated in TDCJ and cannot make copies and I didn't have enough time to hand write another copy.

Would you please send me a copy of my submittal?


Thank you!


John M Devorhak, prose

John M Devorhak

Duncan Unit 1855073

1502 South 1st St

Diboll, TX 75941

FOURTH COURT OF APPEALS

SAN ANTONIO, TEXAS


APPELLANT COURT CAUSE NO. 04-14-00060-CR


JOHN M. DONOHUE

APPELLANT

V

THE STATE OF TEXAS

APPELLEE


FROM THE 187TH JUDICIAL DISTRICT COURT

BEXAR COUNTY, TEXAS

TRIAL COURT CASE NO. 2013-CR-3514

HONORABLE RAYMOND ANGELINI, JUDGE PRESIDING


MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO

MEMORANDUM OPINION


TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW, JOHN M. DONOHUE, APPELLANT, PRO SE, AND FILES THIS MOTION FOR EXTENSION OF TIME FOR APPELLANT TO FILE RESPONSE TO MEMORANDUM OF OPINION AND TO COMPLAIN OF INEFFECTUAL COUNSEL IN THE TRIAL COURT AND THE FOURTH COURT OF APPEALS, IN THE ABOVE STYLED AND NUMBERED CAUSE. APPELLANT WILL SHOW THE HONORABLE COURT:

(CONT.)

(1)

FILED
IN THE COURT OF APPEALS
AT SAN ANTONIO, TEXAS
2015 FEB 23 AM 11:46
KEITH E. HOTTLE
CLERK

## I

Appellant is currently incarcerated in the Duncan Unit of the Texas Department of Criminal Justice. Although the Memorandum of Opinion was filed on January 7, 2015, Appellant did not receive a copy until February 13, 2015.

## II

Appellant sent a request for the status of this case to the Court, which included a stamped, addressed return envelope. The Court did not use the envelope and sent it, along with the Memorandum, to an incorrect address.

## III

William T. Reece, Jr., Attorney for Appellant and appointed by the Honorable Court, did not inform Appellant of the Court's decision and apparently is taking no further action on behalf of Appellant.

## IV

Appellant alleges that neither the trial attorney nor the Appellant attorney provided an effective or comprehensive defense and showed conscious indifference to the proceedings or the outcome.

## V

Appellant seeks a time extension to file a response, pro se, to the Court and complain of the inadequacy

(2)

of Counsel.

## VI

APPELLANT WILL SHOW THE COURT:

A. ROSS A. RODRIGUEZ - TRIAL ATTORNEY

1) HAD NO INTENTION OF FAIRLY REPRESENTING APPELLANT;

(a) THE RECORD SHOULD SHOW THAT RODRIGUEZ MISSED ONE HEARING ENTIRELY AND THEN ATTEMPTED TO HAVE HIMSELF REMOVED AS COUNSEL, BUT THE COURT DENIED HIS REQUEST AND ORDERED HIM TO BEGIN THE TRIAL IMMEDIATELY.

(b) THE COURT GRANTED A ONE DAY EXTENSION, BUT ON THE MORNING OF THE TRIAL RODRIGUEZ QUIT AGAIN AND STORMED OUT OF AN ADJACENT VACANT COURTROOM WHERE THE BAILIFF HAD TAKEN RODRIGUEZ AND APPELLANT TO TALK. IF BAILIFF'S FILE REPORTS, THE INCIDENT SHOULD BE IN THE RECORD.

(c) RODRIGUEZ LATER RETURNED TO THE COURT, BUT CARRIED NO FILES OR FOLDERS FOR REFERENCE OR EXHIBITS.

(d) IT APPEARED THAT RODRIGUEZ HAD NOT PERFORMED ANY DISCOVERY BECAUSE HE DID NOT HAVE ANY REPORTS OR DOCUMENTS OR PHOTOGRAPHS THAT HE SAID HE WOULD OBTAIN FROM THE PROSECUTING ATTORNEY.

(e) WHEN ASKED WHERE COUNSEL'S RECORDS WERE, HE SAID THEY WERE IN HIS BRIEF CASE, BUT HE DIDN'T HAVE A BRIEF CASE AT THE DEFENSE TABLE. HE ONLY CARRIED A BLANK, YELLOW LEGAL PAD.

(CONT.)

(3)

B. William T. Reece, Jr.

1). It does not appear that Reece did any research into the overall scope of the case.

2). Reece never contacted appellant with questions about the case and refused to accept collect calls from appellant, even though he would have been reimbursed by appellant's mother.

3). Appellant sent numerous letters with information, but it's not clear if Reece used any of it.

## VII

Appellant alleges that trial counsel provided just enough defense during the trial to avoid being admonished by the court. His line of questioning and follow up to answers didn't seem to have purpose or direction and so much of the dialogue was left hanging that he provided no evidence which left the jurors to have to form their own conclusions from incomplete information. Appellant alleges that trial counsel worked to suppress evidence rather than advance appellant's defense and proof of the allegation should come to light upon close examination of the record.

## VIII

MEMORANDUM BACKGROUND

1. Memorandum opinion does not include that appellant has no memory, with the exception of fragmented flashbacks, of

(4)

THE FIRE OR EVENTS SURROUNDING IT, BEGINNING FROM APPROXIMATELY THE THURSDAY OF THE WEEK PRIOR TO THE FIRE, UNTIL A POINT WHEN APPELLANT WAS BEING HELD IN THE BEXAR COUNTY INFIRMARY. AND TOTAL CONSCIOUSNESS OF HIS SURROUNDINGS AND HAPPENINGS UNTIL HE WAS PLACED IN THE JAIL'S GENERAL POPULATION. THIS SHOULD BE INCLUDED IN THE RECORD OF APPELLANT'S FIRST COURT APPOINTED ATTORNEY, WHICH HAD A PSYCOLOGICAL EVALUATION DONE BEFORE APPELLANT WAS RELEASED ON BOND.

2. APPELLANT BELIEVES THAT THE INITIAL STATEMENT TO GORDON LEE WAS "CHECK THE HOUSE! I SET IT ON FIRE!" AND DID NOT INCLUDE "TO GET ATTENTION" OR "HELP". APPELLANT BELIEVES HE FEARED FOR THE SAFETY OF HIS HOME AND ASKED GORDON LEE TO SEE WHAT COULD BE DONE BECAUSE APPELLANT WAS NOT PHYSICALLY ABLE.

3. APPELLANT BELIEVES THAT "TO GET ATTENTION" OR "HELP" WAS ADDED LATER, SARCASTICALLY, POSSIBLY INTENDED TO BE IN THE FORM OF A JOKE. APPELLANT BELIEVES HE MAY HAVE REALIZED THE FIRE MAY HAVE BEEN STARTED FROM A BURNING CIGARETTE. (WHEN GORDON LEE FIRST RECOUNTED APPELLANTS STATEMENT, THE WORDS "TO GET ATTENTION" WERE NOT USED."

4. APPELLANT BELIEVES THE WORDS "TO GET ATTENTION" OR "HELP" WHEN BEING QUESTIONED BY AUTHORITIES.

## INEFFECTIVE ASSISTANCE OF COUNSEL

1. Should the court grant appellant an extension of time, it would be shown that " a reasonable probability exists that but for counsels' un professional errors, the result of the proceeding would have been different." LYNCH V STATE, 318 SW 3d 902, 905 (Tex App - San Antonio 2010, pet. Ref'd)


## INVESTIGATION AND FAILURE TO PRESENT EVIDENCE

1. Trial counsel failed to conduct a comprehensive form of discovery and did not utilize evidence that was made available.

2. Trial counsel did not convey the true scope of appellant's physical and mental condition or state that appellant has no memory of a fire, hospitalization or arrest, except for fragmented flashbacks.

3. Trial counsel attempted to quit as appellant's attorney on two occasions, but was not allowed to by the court.

4. Court appointed appellant attorney never contacted appellant concerning the case and it's clear that he did not understand the complexities by reading his brief.

5. Trial court counsel also represented appellant in appellant's divorce. Virtually the same records (i.e. Police, EMS, medical etc.) were needed as in the criminal trial. Trial counsel never obtained the records and walked out as appellant's divorce attorney without consulting with appellant.

(cont.)

(6)

6. TRIAL COUNSEL DID NOT OBTAIN POLICE AND EMS REPORTS THAT WOULD HAVE SHOWN:

(a) JANUARY 21, 2015 - APPELLANT'S MOTHER CALLED POLICE TO REQUEST A WELFARE CHECK BECAUSE SHE HAD NOT BEEN ABLE TO CONTACT APPELLANT BY PHONE AND WAS CONCERNED FOR HIS SAFETY.

(b) JANUARY 21, 2015 - POLICE REPORTED BACK TO APPELLANT'S MOTHER THAT APPELLANT WAS OK.

(c) JANUARY 21, 2015 - APPELLANT WENT TO NEIGHBORS HOME, GORDON LEE, TO USE THE PHONE BECAUSE APPELLANT COULD NOT FIND HIS CELL PHONE. APPELLANT CALLED HIS MOTHER, BECOMING ANGRY AND ABUSIVE SHE HAD NOT CALLED 911 TO COME HELP HIM DURING THE DAY.

(d) JANUARY 21, 2015 - EMS AND POLICE WERE CALLED BECAUSE OF APPELLANT'S ERRATIC BEHAVIOR. EMS TECHNICIAN TESTIFIED TO APPELLANT'S APPEARANCE AND CONDITION, INCLUDING STATING THAT ALCOHOL WAS PRESENT AND A BURNING CIGARETTE WAS ON TOP OF A WOOD END TABLE. THE JURY WAS LEFT TO FORM THEIR OWN CONCLUSION OF THE STATEMENTS BECAUSE TRIAL COUNSEL DID NOT:

(i) PRESENT THE HOSPITAL RECORD SHOWING THAT INTOXICATION WAS NOT A FACTOR IN APPELLANTS CONDITION. (APPELLANT HAD GIVEN TRIAL COUNSEL A COPY OF THE RECORD TO COPY FOR THE RECORD)

(ii) EXPLAIN THAT THE WOOD TABLE HAD A GLASS TOP WHICH COULD NOT BURN AND THAT THE CIGARETTE MUST HAVE FALLEN OFF THE EDGE OF THE ASH TRAY AND WAS NOT BEING USED IN AN ATTEMPT TO START A FIRE.

(7)

(e) JANUARY 22, 2015 - (APPROX 4:00 AM ACCORDING TO GORDON LEE.) APPELLANT RETURNED HOME FROM THE HOSPITAL AND WAS HELPED INTO THE HOUSE BY THE CAB DRIVER AND GORDON LEE BECAUSE OF APPELLANTS TROUBLE WALKING. APPELLANT FELL ASLEEP IN HIS RECLINER CHAIR AND AWOKE WHEN HE COULD NOT BREATH. APPELLANT DOES NOT REMEMBER A HOUSE FIRE BUT DID IMAGINE THE TIP OF HIS WALKING CANE WAS ON FIRE AND REMEMBERS FALLING INTO WHAT HE IMAGINED TO BE BOXES CONTAINING CHRISTMAS PRESENTS AND FEARING HE HAD DAMAGED HIS GRANDDAUGHTERS NEW COMPUTER. HOWEVER, THE WALKING CANE DID NOT HAVE FIRE DAMAGE AND THE BOXES WERE MOVING BOXES. APPELLANT SOMEHOW MADE IT TO THE GARAGE AND FLED THE FIRE BY ROLLING DOWN THE DRIVEWAY IN AN OFFICE CHAIR WHERE NEIGHBORS FOUND HIM IN THE STREET. GORDON LEE WENT TO CHECK ON THE HOUSE AS REQUESTED, AND WAS ABLE TO EXTINGUISH THE FIRE WITH A PITCHER OF WATER. APPELLANT WAS TAKEN TO METHODIST HOSPITAL FOR THE SECOND TIME AND THEN TRANSFERED TO SOUTHWEST GENERAL HOSPITAL WHERE HE WAS KEPT FOR MORE THAN A WEEK FOR MENTAL EVALUATION. TRIAL COUNSEL DID NOT SUBMIT EMS OR HOSPITAL RECORDS TO ESTABLISH APPELLANTS PHYSICAL OR MENTAL STATE.

(f) JANUARY 31, 2015 - APPELLANT WAS AT HIS HOME WHEN POLICE WERE CALLED BY APPELLANTS ESTRANGED WIFE BECAUSE ERRATIC BEHAVIOR. APPELLANT WAS TAKEN TO METHODIST HOSPITAL FOR THE THIRD TIME, WHERE HE WAS TREATED RELEASED AROUND 4:00 PM THAT AFTERNOON.

(g) ~~FROM~~ FEBRUARY 1, 2015 - (APPROXIMATELY 1:00 AM) APPELLANTS ESTRANGED WIFE CALLED POLICE TO HAVE APPELLANT EVICTED FROM RESIDENCE FOR ~~DOMESTIC VIOLENCE VIOLATION~~ VIOLATING COURT ORDER TO VACATE

(8)

THE HOME. POLICE STATED THAT WHEN THEY ENTERED THE RESIDENCE, APPELLANT HAD A LARGE FIRE BURNING IN THE FIRE PLACE AND THAT "ACORNS" (PINE CONES WHICH WERE USED FOR PINE SCENT) HAD ROLLED OUT OF THE FIREPLACE AND ON TO THE CARPET. OFFICERS EXTINGUISHED THE "LARGE" FIRE BECAUSE THEY WERE AFRAID IT MIGHT SPREAD TO OTHER PARTS OF THE HOUSE. OFFICERS APPARENTLY INFORMED APPELLANT THAT HE HAD TO VACATE THE RESIDENCE AND ALSO DISCUSSED THE PREVIOUS FIRE. APPELLANT BECAME AGITATED AND THRUST A ZIPPO LIGHTER AT THE CARPET AND TOLD THE OFFICERS IT WAS HIS HOUSE AND COULD BURN THE WHOLE THING DOWN IF HE WANTED TO. APPELLANT WAS ARRESTED FOR ATTEMPTED ARSON AND ARSON.

1) TRIAL COUNSEL DID NOT TELL THE JURY THAT APPELLANT HAD BEEN TAKEN TO THE HOSPITAL EARLIER THAT DAY AND RETURNED AROUND 4:00 PM. HE DID NOT SUBMIT THE HOSPITAL REPORT OR THE POLICE REPORT THAT APPELLANT HAD GIVEN HIM TO COPY FOR THE RECORD.

2) TRIAL COUNSEL FAILED TO EXPLAIN THAT APPELLANT DID VIOLATE THE COURT ORDER TO VACATE THE RESIDENCE, BUT WAS NOT AWARE OF THE DATE AND THAT THE ORDER BECAME EFFECTIVE AT MIDNIGHT ON JANUARY 30, 2015, WHICH WOULD HAVE GIVEN ESTRANGED WIFE THE OPPORTUNITY TO HAVE APPELLANT REMOVED WHEN THE POLICE WERE CALLED DURING THE AFTERNOON. APPELLANT ALLEGES ESTRANGED WIFE'S MOTIVE FOR CALLING POLICE AT 1:00 AM ON FEBRUARY 1, 2015, WAS TO HAVE APPELLANT ARRESTED; THINKING THAT THE COURT ORDER DATE WAS JANUARY 31, 2015, THE LAST DAY OF THE MONTH INSTEAD OF JANUARY 30, 2015. COUNSEL WITHHELD THIS INFORMATION

(9)

AND DID NOT ALLOW WITNESS TESTIMONY THAT WOULD DESCRIBE HOW ESTRANGED WIFE HAD HID AT THE HOUSE AND WAITED UNTILL AFTER MIDNIGHT TO CALL POLICE. HAD ESTRANGED WIFE NOT CREATED THE CONDITION THAT ALLOWED POLICE TO INTERVENE, THERE WOULD NOT HAVE BEEN AN ATTEMPTED ARSON CHARGE AND POSSIBLY, NO ARSON CHARGE OR ARREST.

3) TRIAL COURT COUNSEL FAILED TO EXPLAIN THAT THE OFFICER'S FEAR OF APPELLANTS "LARGE" FIRE THAT WAS BURNING IN THE FIREPLACE OF SPREADING TO AREAS OUTSIDE THE FIREPLACE. FIREPLACES ARE BUILT FOR FIRES. APPELLANT'S FIRE PLACE IS BRICK ON ALL SIDES AND APPROXIMATELY 14' TALL AT THE INTERIOR OF THE HOUSE, WITH AN 18" WIDE/DEEP HEARTH AND BRICK MANTLE. THE "ACORNS" (PINE CONES) THAT ROLLED ONTO THE CARPET ARE TREATED TO ENHANCE THE PINE SCENT AND TEND TO SMOLDER RATHER THAN BURN WITH A FLAME, BUT EVEN PINE CONE THAT WAS FLAMING CAME IN CONTACT WITH THE CARPET, THE FIRE WOULD EXTINGUISH IT'S SELF FAIRLY RAPIDLY BECAUSE NEITHER MATERIAL IS A GOOD SOURCE FOR COMBUSTION.

4) TRIAL COUNSEL FAILED TO EXPLAIN TO THE JURY THAT APPELLANTS LESSON OF PASSING THE ZIPPO LIGHTER AT THE CARPET AND MAKING A PROCLAMATION WAS AN ACT OF DEFIANCE AND PROTEST OVER BEING TOLD TO LEAVE HIS HOME IN THE MIDDLE OF THE NIGHT IN THE MIDDLE OF WINTER. IT IS ABSURD THAT THE JURY COULD CONCIEVE THAT APPELLANT BELIEVED THAT LIGHTING THE CARPET WITH THE LIGHTER AND THAT NYLON CARPET WOULD FLARE UP INTO AN INFERNO AND BURN DOWN THE HOUSE AND THAT WAS HIS FEAR WHEN HE PERFORMED THE ACT IN FRONT OF THE OFFICERS. ANY PERSON WOULD

(10)

become agitated and defensive if they were told to leave their home in the middle of the night with no transportation, no money and nowhere to go. Appellant alleges police arrested Appellant to appease estranged wife Ratiul for the purpose of restraining a dangerous individual.

(h) Suppression of Medical Records, Witness Testimony and Telephone Records

1). Appellant was taken to the Hospital by police or EMS on January 21, 22 (twice), January 31 and Jail Infirmary on February 1, 2013.

2). Appellant provided hospital reports from January 21, 22 and January 31, 2013, to counsel to make copies for the record. Reports showed depression to severe depression, agitation, irritable, anxious and argumentative. Reports do not show intoxication as a factor. Reports show Appellant weighed 110 pounds which would have substantiated Appellants claims of declining health since first hospitalization one year prior.

3). Appellant requested that counsel obtain medical records from Bexar County Jail. There was an expensive cost for Appellant to obtain records, but were free if counsel requested them. Counsel did not obtain the records.

4). Appellant asked counsel to assist in getting records from Southwest General Hospital. Because Appellant was transferred from Methodist Hospital to Southwest General and the involvement of doctors from both hospitals, Appellant was having trouble getting through the maze to obtain

(11)

THE RECORDS. COUNSEL DID NOT OBTAIN THE REPORTS.

5). JANUARY 21, 2013 - BEGINNING AT 7:20 AM UNTIL 7:30 AM AND AGAIN AT 9:45 AM UNTIL 10:15 AM, APPELLANT MADE NUMEROUS PHONE CALLS FROM HIS CELL PHONE WHICH LASTED ONLY SECONDS AND NEVER CONNECTED. A TEXT MESSAGE WAS ALSO SENT AT 7:30 AM WHICH READ "AL, HELP ME." THE MAJORITY OF THE NUMBERS CALLED APPEARED TO BE AT RANDOM AND THE OWNERS OF THE NUMBERS STATING THAT DID NOT KNEW APPELLANT. THE PHONE WAS FOUND IN APPELLANTS TRUCK AFTER RELEASE FROM JAIL ON BOND. THE BATTERY WAS DEAD, SO THE LAST CALLS MADE WERE PRESERVED. TRIAL COUNSEL WITHELD THIS INFORMATION.

## LACK of CONTACT WITH DONOVIE

1). THE RECORD SHOULD SHOW THAT TRIAL COUNSEL PETITIONED THE COURT TO BE REMOVED FROM THE CASE. AND THAT THE COURT DENIED THE REQUEST AND ORDERED COUNSEL TO TRIAL.

2). APPELLANT GAVE COUNSEL MEDICAL RECORDS, A POLICE REPORT AND WITNESS STATEMENTS TO COPY. IT WOULD NOT BE APPARENT IN THE RECORD THAT COUNSEL WAS GIVEN THE RECORDS, BUT IT IS APPARENT FROM THE RECORD THAT COUNSEL COULD HAVE OBTAINED NUMEROUS POLICE, EMS AND HOSPITAL RECORDS THAT COULD HAVE BEEN USED IN APPELLANTS DEFENSE.

## CROSS-EXAMINATION / LACK of ACCELERANT

1) IT IS PRESENT IN THE RECORD THAT BOTH ATTORNEYS ARE ILL-INFORMED ABOUT ACCELERANTS AND THE CHARACTERISTICS OF FIRE INVOLVING DIFFERENT MATERIALS.

(12)

2) TRIAL COUNSEL WAS ESPECIALLY INEFFECTIVE IN QUESTIONING THE INSPECTOR WHO WAS ONLY GOING TO ANSWER QUESTIONS AND NOT ADVANCE ANY THEORIES, EXCEPT THAT THE FIRE WAS CAUSED BY AN OPEN FLAME. COUNSEL SHOULD HAVE AT LEAST QUESTIONED OF HOW THE FIRE TRAVELED FROM POINT "A" TO POINT "B".

## FAILURE TO ADDRESS CERTAIN FACTS OF THE CASE

1) TRIAL COUNSEL FAILED TO OBTAIN, USE OR SUBMIT MEDICAL EVIDENCE TO ESTABLISH APPELLANT'S MENTAL STATE.

2) TRIAL COUNSEL DID NOT HAVE COPIES OF PHOTOGRAPHS OF APPELLANT'S HOME THAT WERE PRESENTED BY THE PROSECUTION, NOR DID HE USE THE PHOTOGRAPHS THAT WERE AVAILABLE, ALONG WITH A HAND DRAWN LAYOUT OF THE FLOOR PLAN OF APPELLANT'S LIVING ROOM SHOWING FURNITURE, DOORS, WINDOWS, FIREPLACE, MOVING BOXES, ETC., TO SHOW A THEORY FOR THE CAUSE AND EFFECT OF THE FIRE.

3) TRIAL COUNSEL DID NOT EXPLAIN TO THE JURY THAT HOLES IN THE SHEETROCK WALLS AND BROKEN WINDOW SILLS WERE NOT CAUSED BY THE FIRE BUT BY FIRE FIGHTERS LOOKING FOR AN IMAGINARY FIRE CONCEALED IN THE WALL CAUSED BY AN ELECTRICAL SHORT IN A WALL THAT HAD NO ELECTRICAL OUTLETS.

4) TRIAL COUNSEL FAILED TO ADEQUATELY IMPRESS ON THE JURY THAT THE FIRE WAS PUT OUT BY GORDON LEE WITH A PITCHER OF WATER AND THE DAMAGE ESTIMATE BY THE INVESTIGATOR WAS $15,202.00.

## Conclusion

APPELLANT RESPECTFULLY DISAGREES WITH THE COURT THAT

(13)

THE RECORD DOES NOT SHOW DEFICIENT PERFORMANCE. WHEN COUNSEL FAILS TO INCLUDE ALL ACTS THAT TOOK PLACE TO CREATE THE EVENT, AND NEGLECTS TO FUNNEL THOSE ACTS INTO A SEQUENCE THAT PRODUCES A LOGICAL CONCLUSION FOUNDED IN FACT AND BASED ON ALL CREDIBLE INFORMATION AVAILABLE AT THE TIME, COMMITS AN IRREVERSABLE ERROR.

TRIAL COUNSEL INTENTIONALLY WITHHELD AVAILABLE INFORMATION OR PURPOSELLY DISRUPTED THE LOGICAL FLOW OF QUESTIONS AND ANSWERS, THUS PREVENTING AN OPINION BASED ON COMPREHENSIVE DIALOGUE.

## THEORY

APPELLANT CONTENDS THAT, IF A NEW TRIAL WERE GRANTED, THAT IT WOULD BE PROVED BEYOND A REASONABLE DOUBT THAT THE FIRE STARTED FROM CIGARETTE BUTTS THROWN INTO A CARDBOARD BOX THAT WAS BEING USED FOR TRASH AND SAT TO THE REAR OF APPELLANTS BLUE RECLINER CHAIR, ALONG WITH A PLASTIC ½ GALLON LIQUOR BOTTLE AND A STYROFOAM ICE CHEST, WHICH ARE SHOWN SCATTERED AROUND IN PROSECUTORS PHOTOGRAPHS.

APPELLANT BELIEVES THAT THE HOT ASHES FROM AN ASH TRAY THROWN INTO THE CARDBOARD BOX IGNITED PAPER (THE ACCELERANT) INSIDE THE BOX CAUSING THE "OPEN FLAME"; AND THAT WHEN APPELLANT WOKE UP IN THE RECLINER BECAUSE OF THE SMOKE, APPELLANT SAW FLAMES AND TRIED TO BEAT THEM OUT WITH HIS WALKING CANE. WHEN THAT FAILED, APPELLANT TURNED TO ESCAPE THE FIRE AND FELL INTO THE MOVING BOXES, WHICH APPELLANT BELIEVED TO BE CHRISTMAS PRESENTS, AND WENT TO THE FRONT

(14)

AND LEFT OF THE CHAIR.

HOSPITAL RECORDS SHOW THAT APPELLANT SUFFERED SMOKE INHALATION AND CONTUSIONS WITH INJURY TO HIS RIBS ON THE LEFT SIDE OF HIS CHEST.

THE BOX AND ICE CHEST ARE NOT SHOWN IN THE PHOTOGRAPHS OF THE INTERIOR OF THE HOUSE, WHERE THEY HAD BEEN AND WHICH WITNESSES WOULD VERIFY. INSTEAD, THE ICE CHEST IS OUTSIDE ON THE PATIO, BROKEN, AND THE BOX IS NOT SHOWN. THE LIQUOR BOTTLE IS SHOWN ON THE FLOOR BEHIND THE RECLINER WITH THE NECK PARTIALLY MELTED IN A CURVED SHAPE.

APPELLANT BELIEVES THAT AFTER GORDON LEE EXTINGUISHED THE FIRE, HE AND THE FIRE FIGHTERS THREW THE SMOLDERING DEBRIS OUT THE BACK DOOR INTO A PILE ON THE PATIO AND FISH PONDS. IF THE BOX WERE STILL INTACT AT ALL, IT WOULD PROBABLY BE UNDER THE RUBBLE IN THE VICINITY OF THE ICE CHEST.

THE PHOTOS SHOW THE MELTED LIQUOR BOTTLE AND A SCORCHED AREA OF CARPET CLOSE TO IT. THE LARGE AREA OF THE FIRE WERE THE DRAPES AND CURTAINS AT THE REAR WINDOW WALL BEHIND THE CHAIR AND BOX.

IT MAKES SENSE THAT THE FIRE COULD SPREAD FROM THE AREA BEHIND THE CHAIR, IF THE BOX WAS BURNING AND APPELLANT KNOCKED IT OVER BY HITTING AT THE FLAMES WITH HIS WALKING CANE, CAUSING THE FIRE TO SPREAD TO A WICKER BASKET HOLDING A POT PLANT, AND THEN TO THE WINDOW AREA AND IGNITING THE CURTAINS AND DRAPES AND TRAVELING DOWN THE WINDOW WALL FROM ONE END TO THE OTHER. IT DOES NOT MAKE SENSE THAT THE FIRE WOULD TRAVEL IN THE REVERSE.

(15)

This theory is not new. It is the scenario presented to trial counsel, which he refused to present to the court. Trial counsel presented no theory for the fire, and in turn, presented no defense.

Appellant believes a "smoking box" combined with an "open flame" would produce an accidental fire and result in a verdict of innocence.

### "Extraneous Bad Acts"

Trial counsel intentionally allowed the testimony of extraneous acts to help ensure appellant's conviction. Counsel failed to object to the testimony and had told appellant if he did not testify on his own behalf during the trial that the Bandera County Sheriff's Deputies could not testify. Appellant told counsel he would be happy to have a trial within a trial because the allegations against appellant were false. Trial counsel said he wouldn't allow it.

Trial counsel deliberately misled appellant, would not allow appellant's mother testify in response to the deputies testimony (she had first hand knowledge), was not prepared to cross examine, did not have exhibit "B", which the deputy was basically quoting from and was from another law suit. Counsel did not ask the deputy to produce the video he claimed to have and counsel did not explain to the jury that appellant had not been charged or arrested for any crime by the deputies.

Even though trial counsel did not object to

(16)

THE DEPUTIES TESTIMONY, THE TRIAL COURT ABUSED IT'S DISCRETION BY LETTING THE OFFICER TESTIFY AND THEN TELLING THE JURY TO DISREGARD ANY EVIDENCE THAT HAD NOT BEEN PROVEN. THIS PREJUDICED THE JURY IN FAVOR OF THE PROSECUTION.

TRIAL COUNSEL SHOULD HAVE OBJECTED UNDER RULES 401, 402, 403 AND 404(B), RULES OF EVIDENCE, AS TO THE ADMISSIBILITY OF "EXTRANEOUS BAD ACTS."

THE PROSECUTION PRESENTED EVIDENCE OF EXTRANEOUS OFFENSES, WHICH GENERALLY MAY NOT BE USED AGAINST THE ACCUSED IN A CRIMINAL TRIAL. DAGGETT V STATE, 187 SW3d 444, 450 (TEX. CRIM. APP 2005). SUCH EVIDENCE WILL ALMOST ALWAYS... FORCE THE DEFENDANT TO DEFEND HIMSELF AGAINST UNCHARGED CRIMES AS WELL AS THE CHARGED OFFENSE, AND ENCOURAGES THE JURY TO CONVICT A DEFENDANT ON HIS BAD CHARACTER, RATHER THAN PROOF OF THE SPECIFIC CRIME CHARGED. ID @ 451. THE PROSECUTION ATTEMPTED TO SHOW REPEATED ACTS AS EVIDENCE OF CHARACTER. THIS BAD-CHARACTER-CONFORMITY, WHETHER EXPRESS OR NOT, IS PRECISELY WHAT IS BARRED BY RULE 404(B). ID @ 452. THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING THE EXTRANEOUS OFFENSE UNDER COMMON SCHEME OR PLAN EXCEPTION. [E]VIDENCE IS NOT ADMISSIBLE UNDER THE COMMON SCHEME OR PLAN EXCEPTION OF RULE 404(B) UNLESS "THE DEFENDANT ENGAGED IN THE EXTRANEOUS OFFENSE AS PART OF THE PLAN TO COMMIT THE OFFENSE THAT IS ON TRIAL. SEE ID @ 450. IN OTHER WORDS, THE PROSECUTION HAS TO PROVE THAT THE OFFENSE ON TRIAL WAS COMMITTED AS PART OF A PLAN TO COMMIT THE EXTRANEOUS ACT. ID

THE EXTRANEOUS ACT TESTIFIED TO BY THE

(18)

Bandera County Sheriffs Deputy was not even remotely related in scheme or plan to the trial in progress and if the testimony was intended to show character, it was barred by Rule 404, Rules of Evidence, and should have been objected to and stricken from the record.

Based on the inadmissibility of extraneous "bad acts" as evidence and the prejudice the testimony created against appellant, appellant moves the court to declare a mistrial and grant a new trial, or in the alternative, grant a new hearing for the punishment phase of the trial.

## PRAYER

Wherefore, premises considered, appellant respectfully prays that the honorable court will consider and grant a time extension to file a proper response and to also consider and grant a mistrial with new trial, or grant a new hearing on the punishment phase of the trial, and any other relief that the court deems just and fair.

Respectfully Submitted,

John M. Donohue, pro se
Appellant
John M. Donohue
Duncan Unit 1655073
1502 South 1st St
Diboll, TX 75941

(19)

Verification

I, JOHN M DONOHUE, UNDER PENALTY OF PERJURY, VERIFY
AND DECLARE THAT APPELLANT'S MOTION FOR EXTENSION OF TIME
TO FILE RESPONSE TO MEMORANDUM OPINION IS TRUE AND CORRECT.
EXECUTED ON THIS THE 17TH DAY OF FEBRUARY, 2015.

John M Donohue, PRO SE
APPELLANT

JOHN M DONOHUE
DUNCAN UNIT 1895073
1502 SOUTH 1ST ST
DIBOLL, TX 75941





Duncan v.
1502 South
DuBois Tx 75514

Fourth Court of Appeals
300 Dolorosa, Suite 3200
San Antonio, Texas 78205-3514

FILED
IN THE COURT OF APPEALS
2015 FEB 23 AM 11:46
KEITH E. HOTTLE
CLERK

Legal Mail